IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FENN FARM and THREE RIVERS CATTLE, LTD, CO.

       Plaintiffs,

v.                                         No. 2:20-cv-00468-MV-GJF

NEW MEXICO DEPARTMENT OF GAME
AND FISH; MICHAEL SLOANE, DIRECTOR
OF THE NEW MEXICO DEPARTMENT OF GAME
AND FISH, in his individual and official capacity;
NEW MEXICO GAME COMMISSION; SHARON SALAZAR
HICKEY, CHAIR OF THE NEW MEXICO GAME
COMMISSION, in her individual and official capacity;
ROBERTA SALAZAR-HENRY, VICE-CHAIR
OF THE NEW MEXICO GAME COMMISSION,
in her individual and official capacity;
JIMMY BATES, MEMBER OF THE NEW
MEXICO GAME COMMISSION, in his individual
and official capacity; GAIL CRAMER,
MEMBER OF THE NEW MEXICO GAME
COMMISSION, in her individual and official capacity;
TIRZIO LOPEZ, MEMBER OF
THE NEW MEXICO GAME COMMISSION, in his
individual and official capacity; DAVID SOULES,
MEMBER OF THE NEW MEXICO GAME
COMMISSION, in his individual and official capacity,
and JEREMY VESBACH, MEMBER OF THE NEW
MEXICO GAME COMMISSION, in his individual
and official capacity

       Defendants.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS [DOC. NO. 2]**

     Defendants Michael Sloane and the Department of Game and Fish's Motion to Dismiss is

premised on a falsehood—the assertion that "at the time of the filing of the Complaint, the validity

of the Regulation that lies at the heart of the Complaint and each of its claims was directly called

into question both by a New Mexico Attorney General's Opinion. . . and in a mandamus

proceeding filed and pending for more than a month in the New Mexico Supreme Court." [Doc.

No. 8 at 3]. Defendants in fact had been instructed by the New Mexico Attorney General that the document they claim "called into question" the Rule[1] "does not constitute a formal Attorney General opinion, and notably does not have the force of law." December 16, 2019 Letter from Chief Deputy Attorney General Tania Maestas, attached as Exhibit A. Defendants were instructed that the Rule was validly promulgated and that failing to abide by the Rule "prematurely exposes the Commission and the State to extreme litigation risk." *Id.* Defendants had no legitimate basis to decline to comply with their legal obligations, and Plaintiffs have stated plausible claims for relief. Defendants' Motion should be denied. While Director Sloane—in secret and as a result of this litigation—complied with his regulatory obligations with respect to the application Fenn Farm submitted pursuant to the Rule, Director Sloane and the Department continue to violate the law by claiming that the Department is no longer accepting applications. Mandamus is still appropriate.

## BACKGROUND

This case (the Fenn Farm case), and Defendants' Motion to Dismiss, relate to the application submitted by Plaintiff Fenn Farm and the Defendants' actions that have prevented Plaintiff Three Rivers from submitting an application pursuant to the Rule. The legal arguments Defendants make are identical to the legal arguments they make in a Motion to Dismiss they filed in Case. No. 1:20-CV-427 SCY/KK (the RDOP case). *Compare* Doc. Nos. 7 and 8 in Case No. 1:20-CV-427 SCY/KK *with* Doc. Nos. 3 and 4 in Case No. 2:20-cv-00468-MV-GJF. The parties have all agreed that the two cases should be consolidated. Plaintiffs thus incorporate by reference the argument and factual background

---

[1] The "Rule" is Rule 19.31.22—a New Mexico regulation that allows landowners to obtain certificates establishing that the waters flowing over their land are non-navigable. Certificates make clear to the public that walking or wading on the private property below a waterway is unlawful and allow landowners to obtain signs from the Department.

contained in their responses to Plaintiffs' motions to stay and to dismiss in the RDOP case.

Plaintiffs have set forth a detailed recounting of the factual background of this litigation in their Response to Defendants' Motions to Stay which is being filed contemporaneously with this response. Plaintiffs also have filed, in the RDOP Case, a Response that addresses the legal arguments made in Defendants' Motion to Dismiss. *See* Doc. No. 20 in 1:20-CV-427 SCY/KK. While this Response makes the same legal arguments as have been made in the RDOP Case, this Response addresses additional issues that are specific to Fenn Farm and Three Rivers.

In particular, the factual predicate of this case is different than the RDOP Case. The plaintiffs in the RDOP case all have pending applications before the Defendants, which Defendants have refused to process in accordance with the Rule. At the time that it filed this suit, Fenn Farm had been explicitly informed—both by the Director himself and a posting on the Defendants' website—that the Defendants were not accepting applications. And, Three Rivers has not yet attempted to submit an application due to the Defendants' actions. While the plaintiffs in the RDOP case are in a different stage of the application process, the underlying legal issue—whether Defendants are obligated to comply with a validly promulgated regulation—is identical.

The factual predicate of this case is as follows. Both Fenn Farm and Three Rivers were in the process of preparing applications pursuant to the Rule. The information required for an application is complex, and it takes a significant amount of time to prepare an application. In March 2020—without any prior public hearings or announcements—the Commission, the

Department, the Commissioners, or the Director added (in red, bold, and italicized text) the following unequivocal statement regarding the Landowner Certification of non-navigable river segment application process to its website: ***The Department is not currently considering any new application under this program. (Effective 03-09-2020).*** *See* Game Commission Website Screenshot, retrieved from http://www.wildlife.state.nm.us/commission/non-navigable-water-application/ on June 12, 2020, attached as Exhibit B. Fenn Farm, which was substantially finished with its application when the language was added to the website, completed its application and attempted to submit it to the Department on March 13, 2020 via hand delivery.

During that attempted delivery, Director Sloane himself spoke to Fenn Farm's agent and explicitly refused to accept Fenn Farm's application. Director Sloane asserted that the Department was not currently accepting applications due to pending litigation. Fenn Farm was thus unable to hand deliver its application to the Department despite the fact that the Rule explicitly mandates that "An application shall be accepted for further consideration if it includes the required contents without regard to the merits of the application.  An application shall not be refused for technical reasons." Rule 19.31.22.8(C) NMRA. Later that day, counsel for Fenn Farm attempted to submit Fenn Farm's application by sending a copy of the application to Director Sloane via email. Neither Director Sloane nor the Department responded to that email so, on March 17, counsel asked Director Sloane to respond. *See* March 17, 2020 Email, attached as Exhibit C.  Director Sloane never responded.

As a result of Director Sloane's refusal to accept Fenn Farm's application and the information published on the Department's website, Three Rivers decided not to file its application—which was substantially complete—as to not incur additional preparation costs. Plaintiffs then initiated this litigation to compel the Defendants to comply with their obligations

under New Mexico law. Plaintiffs filed suit in New Mexico State Court on May 8, 2020 and requested that the state court issue a writ (the form of process utilized in a writ of mandamus proceeding). Before Plaintiffs obtained that writ, and before Plaintiffs even provided notice of the lawsuit to Defendants, Defendants removed the case to this Court. *See* Doc. No. 1.

Then, on May 29, Defendants filed their Motion to Dismiss [Doc. No. 3] and their brief in support of that Motion [Doc. No. 4]. In their brief, Defendants claim that they have performed all ministerial duties required by the Rule because "Plaintiff Fenn Farm's application was accepted by the Department, forwarded to Director Sloane for review and recommendation, and Director Sloane provided a written recommendation regarding the application to the Commission." [Doc. No. 4 at 6]. Defendants attach as an exhibit a letter Director Sloane allegedly sent to the Commission dated May 12, 2020—four days *after* Plaintiffs filed suit and just before Defendants removed the case—in which Director Sloane asserts that the Department received Fenn Farm's application on March 13 and that he was recommending that the Commission approve the application. *See* Doc. No. 4-1.

Defendants' assertion that they accepted Fenn Farm's application on March 13 is directly contrary to Director Sloane's explicit refusal to accept the application on that date and is contrary to the language that is still on the Department's website asserting that the Department is not accepting applications. It thus appears that as a result of Plaintiffs suit, Director Sloane changed course, "accepted" the application, and recommended approval all without informing Fenn Farm that the application had been accepted and while continuing to publicly assert that the Department would *not* accept applications.

This conduct is grossly inappropriate and unlawful. Publicly, the Defendants are asserting that despite plainly applicable law, they will not accept applications and are thus discouraging

applicants like Three Rivers to apply for certificates. In private conversations such as Director Sloane's conversation with Fenn Farm's agent, Defendants are claiming that they are not accepting applications. But in secret, Defendants are apparently actually accepting applications. This is lawless conduct. Does this secret application acceptance apply to any applicant, or only those who file suit? Would the Director have secretly accepted an application of a person not represented by counsel, or would he have maintained the position he took with Fenn Farm's agent that applicants would not be accepted despite there being a person in front of him trying to deliver an application. The Rule *requires* Defendants to accept and process applications, and Defendants public conduct is in gross violation of the Rule.

The Defendants attempt to have this case dismissed because they secretly followed a law that they publicly asserted they would not is disingenuous. It was not until Plaintiffs filed suit that Defendants acted on Fenn Farm's application. But, Defendants have *still* not removed the bold red language on their website asserting that they will not accept new applications. So for potential applicants like Three Rivers, the harm is ongoing. Three Rivers has no way to know if the Defendants will apply the secret process they applied to Fenn Farm (which they have a duty under the law to apply) or the process they state will be applied on their website. Applicants should not be forced to expend time and money on a gamble that the Department might secretly do what it publicly claims it will not. Applicants should not be forced to file suit to get the Defendants to comply with their legal obligations. And, Defendants certainly should not be permitted to try to hide their misconduct by waiting to perform their legal obligations until after an applicant files suit.

**DISCUSSION**

**A. Leave to amend, not dismissal, is the appropriate remedy for any deficiency in Plaintiffs' Complaint due to the higher pleading standard that now applies to this removed case**

Defendants move to dismiss under Rule 12(b)(6) asserting that certain of Plaintiffs' claim do not pass the federal court's plausibility test. *See* Doc. No. 8 at 7. As a threshold matter, this Court should take notice of the fact that the Complaint was drafted for and filed in state court which has a much lower pleading standard. Unlike federal court, where a complaint must contain specific factual allegations that render the claims plausible, New Mexico state court's require simply that a plaintiff give notice of the claims the plaintiff is asserting. *See Rist v. Design Ctr. at Floor Concepts*, 2013-NMCA-109, ¶ 21 (noting that "our standard of notice pleading allows a plaintiff to state only general allegations of conduct in a complaint"). It was to this standard that Plaintiffs drafted their complaint. As this Court has previously recognized,

> Federal Rule of Civil Procedure 15 permits a plaintiff to amend a complaint as of right only within 21 days after serving it or 21 days after service of a Rule 12(b) motion. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). But "[t]he court should freely give leave when justice so requires." *Id.* The Court agrees that, due to the difference between the standards articulated by New Mexico and the U.S. Supreme Court, a plaintiff whose suit is removed from state court to federal court should generally be permitted to amend the complaint if it is determined not to comply with *Twombly* and *Iqbal*.

*Albuquerque Cab Co., Inc. v. Lyft, Inc.*, 2019 WL 1082205, at *9 (D.N.M. Mar. 7, 2019); *and see Downey v. Am. Nat'l Prop. & Cas. Co.*, 2013 WL 12166325, at *6 (D.N.M. Mar. 29, 2013) (concluding that a removed complaint did not meet the heightened plausibility standard but giving leave to file a motion to amend); *and see* Fed. R. Civ. P. 81(c)(2) (allowing the Court to order repleading after removal).

If the Court finds that the allegations in Plaintiffs 'Complaint are lacking, Plaintiffs can readily cure any such deficits by providing more specific factual allegations including, among other things, (1) references to specific statements made by Defendant Sloane at public meetings which plausibly establish that Director Sloane and the Commission engaged in secret meetings related to the Rule; (2) allegations and documents establishing the numerous occasions on which Plaintiffs advised Defendants of their obligations under New Mexico law; (3) additional detail regarding Director Sloane and the Department's refusal to accept new applications which show a concerted effort to deviate from their legal obligations; (4) specific factual allegations about the December 2019 letter sent to Defendants by the Deputy Chief Attorney General advising that they could not rely on the Grubesic Memorandum and that they must comply with the Rule; (5) more detailed factual allegations regarding prior applications approved by the Commission and their similarity to the applications at issue in this lawsuit; and (6) the Commission's additional violations of New Mexico law by failing to hold meetings regarding other applications as required by law; (7); specific factual allegations about the Department and Director refusing to comply with the Inspection of Public Records Act requests and refusing to provide information related to Plaintiffs' claims, potentially covering up conspiratorial wrongdoing.  The appropriate remedy (if any remedy is needed) is thus to allow Plaintiffs to amend, not to dismiss this case.

**B.  Plaintiffs have asserted plausible claims for mandamus relief against Director Sloane[2]**

The Rule imposes mandatory, ministerial, and non-discretionary duties on the Director and the Department. If an application contains all of the information required by the Rule, the

---

[2] Plaintiffs concede that the Department complied with its mandatory duty to forward Plaintiffs' applications to the Director and that they are not seeking mandamus against the Department on that point. Plaintiffs also concede that the declaratory judgment they seek—an order compelling the Commission to issue certificates—is asserted solely against the Commission.

Department and the Director are obligated to accept the application "for further consideration . . . without regard to the merits of the application." Rule 19.31.22.8(C). Applications cannot be "refused for technical reasons," and "[r]efused applications can be appealed." *Id.* If an application is accepted, the Director *must*, within 60 days, perform one of two acts: he can *either* make a recommendation that the Commission approve the application *or* he can make a recommendation that the Commission reject the application. *See* Rule 19.31.22.9(B) NMRA.

Fenn Farm's application met all of the requirements of the Rule. *See* Complaint at ¶35. Thus, the Director and the Department had a non-discretionary obligation to accept the application for further processing. The Director's explicit refusal to accept Fenn Farm's application was a violation of Defendants' ministerial obligations, and in and of itself gives rise to viable claims for mandamus relief and violation of Fenn Farm's constitutional rights.        After Director Sloane explicitly refused to accept its application, Fenn Farm initiated this litigation to compel Director Sloane to comply with his legal obligations. It appears that in response to this litigation (but without advising Fenn Farm) Defendants decided to try to conceal their violation of law by secretly accepting the application that Fenn Farm tried to submit. This secret acceptance and processing of the application is contrary to Defendants' representations to Fenn Farm (and to the entirety of the New Mexico law abiding public). An exhibit attached to Director Sloane's Motion to Dismiss [Doc. No. 4-1] reveals that despite having told Fenn Farm he would not accept any applications, despite that Director Sloane had not responded to multiple inquires on the subject, and despite that Defendants' website continued to boldly state they were not accepting applications, Director Sloane apparently accepted Fenn Farms' application at some point unbeknownst to Fenn *and* recommended that the Commission approve the application just days after Fenn Farm initiated this litigation. But, Director Sloane did not bother to tell Fenn Farms that he had accepted the

application, much less that he in fact had recommend approval as required by the Rule. This raises serious questions whether Director Sloane and the Department actually followed the Rule at the time the application was processed or only followed the Rule after Fenn and Three Rivers lawsuit was filed.

Despite having attempted to hide their misconduct by secretly processing Fenn Farm's application, Defendants cannot sweep aside the facts that (1) Director Sloane explicitly refused Fenn Farm's application and made clear that it and would not be accepted for further processing and (2) Defendants website still contains language asserting that applications will no longer be accepted. Plaintiffs have repeatedly asked Defendants to remove this language, and they have refused. Defendants are thus either misrepresenting to the entirety of the New Mexico citizenry the status of the Rule or are illegally continuing to not accept applications.  Papering over this lawlessness with a recommendation letter in this context without further information and discovery would be allowing the Department and Director to sweep their inconsistent implementation of the Rule under the rug and into the darkness.

Three Rivers, in reliance on the Defendants' public assertions, has not yet submitted an application. The Defendants provide no assurance in their brief that they will comply with their obligations when Three Rivers finalizes and submits its application, nor do they acknowledge that Three Rivers has *already* been damaged by Defendants' conduct. Three Rivers was induced to delay its application on account of Defendants' public guidance, and even if it completed its application and submitted it today, it is already months behind where it would be in the application process had Defendants not publicly asserted that they will violate the law.

New Mexico law defines a ministerial duty as one that "constitutes an act or thing which [a public official] is required to perform by direction of law upon a given state of facts being shown

to exist, regardless of his own opinion as to the propriety or impropriety of doing the act in the particular case." *Matter of Grand Jury Sandoval Cty.*, 1988-NMCA-007, ¶14. Pursuant to the Rule, the Director and the Department are obligated to accept and process applications submitted to them. The rule provides for due process when an application is rejected and a process for the Director to follow. The Director must provide a written rejection of application letter to put Fenn Farms on notice of they are free to pursue their legal rights of appeal. Plaintiffs requested he provide the notice letter provided by the Rule. The Director told Fenn Farm's agent upon rejection the application he would indeed follow the Rule and provide a letter indicating the Director's final decision. The Director did no such thing, forcing Fenn Farms to file this lawsuit to seek the protections provided by the Rule. Defendants continue to claim publicly that they will not accept applications, and they are thus acting and continue to act in violation of well-established law. The obligations imposed on them by the Rule are mandatory and ministerial, and until the Defendants publicly renounce their position that they will not accept new applications, they are subject to mandamus relief. The Court can enter an order compelling Defendants to (1) remove the unlawful language on their website and (2) accept and process all applications as required by the Rule. This will ensure that Three Rivers can submit an application, and is an appropriate subject of a writ of mandamus as the acts Three Rivers seeks to compel are mandatory and ministerial. The Court can further admonish the Department and Director for violating the substantive due process rights of Fenn Farms, violating the requirements of the rule, and then covering up their violations of law by purporting to comply with the Rule only after litigation was initiated.

Further, the Court can remedy the harm created by Defendants actions (delay in the processing of Three Rivers' forthcoming application) by requiring Defendants to shorten the time for processing the application. Three Rivers has suffered substantial prejudice as a result of

Defendants' actions—but for their public statements Three Rivers would have already submitted an application and would have already received a recommendation of approval from the Director. This is real harm that has been caused by Defendants, and dismissal is inappropriate.

Defendants also attempt to justify Director Sloane's failure to comply with a mandatory ministerial duty by claiming that there is some question about the validity of the Rule. Doc. No. 8 at 13. Defendants contend that two opinions of the New Mexico Attorney General—a 2014 Attorney General King opinion and an August 2016 Attorney General Advisory Letter—cast the validity of the Rule into doubt. In so arguing, Defendants fail to inform the Court that the 2014 Attorney General document *preceded* the enactment of the Statute and the 2016 Attorney General document preceded the promulgation of the Rule. Indeed, The Statute and the Rule were drafted in *response* to what many recreationalists interpret as a license to trespass created by the 2014 King opinion. That opinion thus has no bearing on the validity of the Rule.

Defendants also assert that the *Adobe Whitewater* Petition before the New Mexico Supreme Court somehow justifies Director Sloane's failure to comply with this legal obligation under the Rule. But the *Adobe Whitewater* Petition, which was filed *after* Director Sloane publically asserted that Defendants would not accept any new applications, has no bearing on the Director's obligations as there is no indication that the Supreme Court will even consider the validity of the Rule, much less that it will find that the Rule is invalid. Notably, Defendants do not direct the Court to a single case that allows a state actor to ignore validly enacted law merely because some person or entity has challenged its validity. If state officials were permitted to ignore their legal obligations anytime someone claimed a law was invalid or improper, our government would be crippled as nearly every law is subject to some challenge or criticism. Defendants' failure to cite any authority supporting their bold proposition that the Director can ignore legal duties when they

are challenged should thus be disregarded by the Court. *See In re Ellison*, 62 F.3d 1428 (10th Cir. 1995) (declining to consider arguments that are unsupported by authority). Director Sloane himself has never argued that the Rule is invalid or unclear.  In fact, he sat as Director over the Department and processed five (5) other applications under the same rule.  He has never asked for not obtained a stay of his obligations under the Rule, and he thus has a mandatory duty to comply with the law.

Director Sloane's position also cannot be reconciled with the advice he was given by counsel in December 2019. In response to Director Sloane's failure to provide a recommendation to the Commission, the Chief Deputy of the Office of Attorney General, Tania Maestas, advised Director Sloane (and the Commission) that they *must* continue to comply with the Rule and that they must treat Plaintiffs in the same manner that they treated prior applicants (i.e. issuing a recommendation, holding required meetings, and issuing certificates). *See* Dec. 16, 2019 Letter, (Ex. A) Director Sloane was told by counsel to comply with the Rule, was told that the Rule was valid, and thus cannot now shirk his legal duties by pretending as if there was some uncertainty with the law.

The Court should deny Defendants' Motion as it pertains to the mandamus claim asserted against Director Sloane and the Department. Defendants have a legal duty to accept and process applications, their public statement continues to be that they will not accept applications, and they must be compelled to comply with their legal obligations.

### C.  Plaintiffs' Section 1983 claims should not be dismissed

Director Sloane next asserts that Plaintiffs' Section 1983 claims against him and the Department should be dismissed. He contends that Plaintiffs have not sufficiently identified the conduct he performed that gives rise to a constitutional violation. While true that Plaintiffs— complying with state pleading requirements rather than the more stringent federal pleading requirements—did not reiterate with each cause of action how each factual allegation gave rise to

Plaintiffs' claims, Plaintiffs have asserted plausible factual allegations that establish claims for violation of their constitutional rights at the hands of Director Sloane and the Department.[3] As a starting point, Plaintiffs assert that Director Sloane has performed all duties required of him by law and that he therefore cannot be held liable for any of his conduct. But as explained in detail above, Director Sloane most certainly has not performed all of the acts required of him. The foundational premise of his arguments being wrong, the relief he requests should be denied.

### D.  Denial of substantive due process

Defendants assert that they cannot be held liable for violation of Plaintiffs' right to substantive due process because the Commission, not Director Sloane, has the final decision-making authority to issue Certificates. While true that it is the Commission that has final authority, the Rule sets out a process beginning with the submission of an application and culminating with a final agency action on the part of the Commission. In their Complaint, Plaintiffs alleged specific facts regarding Director Sloane's specific failures to comply with that process—a failure that has resulted Three Rivers' inability to submit an application (and substantial delay if Three Rivers were to rely on the secret process that Director Sloane applied to Fenn Farm). In Paragraphs 25 through 28, Plaintiffs make specific allegations about Director Sloane's failure to comply with the Rule. In Paragraph 33, Plaintiffs allege that the Director's actions were willful. That Paragraph, when read in conjunction with Paragraphs 25 through 28, establishes the willful and intentional nature of the

---

[3] Defendants assert that the Department has no responsibility for the actions at issue in this litigation because Director Sloane is employed at the will of the Commission and is allegedly not an employee of the Department. But, Director Sloane is the head of the Department. Plaintiffs have alleged plausible factual allegations that the Department was involved in the unlawful conduct at issue in this case, and Plaintiffs should be permitted to conduct discovery to ascertain the extent of the Department's involvement.  In response to a recent IPRA request submitted by undersigned counsel seeking information relevant to the *Adobe Whitewater* Petition, other forthcoming applications, and this litigation, the Department unreasonably claimed that it needs until *December 2020* to provide information related to the Rule. Clearly the Department has a role—what else would it be hiding.

Director's conduct: he refused to follow the law even after he was reminded by Plaintiffs that he was obligated to make a recommendation of approval based on his findings.

By failing to comply with that process, Director Sloane set into action an unlawful procedure which has resulted in a deprivation of Plaintiffs' right to substantive due process. Director Sloane's actions have delayed Three Rivers' ability to submit an application. Director Sloane's actions have forced Plaintiffs to incur attorneys' fees to bring this action. Thus, the mere fact that the Commission could disregard Director's Sloane's failure to comply with the Rule and still approve or deny the applications in the face of Director' Sloane's refusal to comply with the law does not insulate him from liability for his own conduct. That is because "[g]overnment actors may be liable for the constitutional violations that another committed, if the actors set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights, thus establishing the requisite causal connection between the government actor's conduct and a plaintiff's constitutional deprivations." *A.M. v. New Mexico Dep't of Health*, 148 F. Supp. 3d 1232, 1264 (D.N.M. 2015) (quotation marks omitted). Plaintiffs have plead plausible allegations that Director Sloane's actions have resulted in Plaintiffs' inability to obtain the certificates they are entitled to under New Mexico law. Dismissal of Plaintiffs' Section 1983 claim for violation of substantive due process is inappropriate.

At this stage of this case, Plaintiffs have alleged plausible facts that establish Director Sloane was a link in the chain of causation that has resulted in the constitutional deprivation at issue in this case. *See id.* at 1265 (noting that "the Tenth Circuit has found liability for those defendants who proximately caused an injury alleged under § 1983 and stated that the fact that the conduct of other people may have concurrently caused the harm does not change the outcome as to the defendant, so long as there was not a superseding-intervening cause of a plaintiff's harm)

(quotation and alteration marks omitted). Discovery will reveal the extent to which the Commission was influenced by Director Sloane's failure to follow the Rule and to what extent it set in motion and played in Plaintiff's conspiracy claims. Dismissal is not appropriate.

### E.  Denial of equal protection

Director Sloane next asserts that Plaintiffs' equal protection claim against him should be dismissed. He correctly recognizes that Plaintiffs are proceeding as a "class of one" as they are not part of a protected class. As explained by the United States Supreme Court, the "purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. *Sioux City v. Bridge Co.*, 260 U.S. 441, 445 (1923). It is not necessary that a plaintiff belong to a protected class—even a "class of one" will suffice if the plaintiff has been treated differently from similarly situated persons. *Village of Willowbrook v. Olech*, 528 U.S. 562 (noting that class of one claims are permitted "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment"). And, disparate treatment in the enforcement of zoning or other land-use regulations can give rise to a valid equal protection claim. *See id.* To establish an equal protection claim, Plaintiffs must "first establish that others, 'similarly situated in every material respect' were treated differently." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011). Plaintiffs then must "show this difference in treatment was without rational basis, that is, the government action was 'irrational and abusive,' and 'wholly unrelated to any legitimate state activity'" *Id.* (citations omitted). The standard applied "is objective" and "if there is a reasonable justification for the challenged action" the court will not "inquire into the government actor's actual motivations." *Id.*

In the Complaint, which Plaintiffs drafted to comply with New Mexico's notice pleading standard rather than the federal court's more stringent standard, Plaintiffs alleged that the Commission "has certified a number of rivers and streams on property owned by similarly situated applicants as being non-navigable." Complaint at ¶24. Plaintiffs made allegations regarding the process by which certificates are issued, including that a critical step in the process is the Director's acceptance of an application and recommendation of approval to the Commission. *Id.* at ¶¶15-23. And, Plaintiffs alleged that the specific waterways that flow over their property are non-navigable and that their applications complied with all requirements of the Rule. *Id.* at ¶¶ 25, 32, and 35-36. Thus, while Plaintiffs did not provide excruciating detail about every similarity between their applications and prior similarly situated applications, Plaintiffs made specific factual allegations setting forth that their applications were similar to prior applications including that the Director himself has conceded the similarity of the applications. *See id.*

Defendants insinuation that they cannot discern which other applicants are similarly situated to Plaintiffs is disingenuous.  There have only been five applications approved by the Commission since the Rule was promulgated. Each of those applications is publicly available at the Commission's website, http://www.wildlife.state.nm.us/commission/non-navigable-water-application/. The Commission's website is a subsection of the Department's website. The ownership of the land below the waterways at issue in the previously approved applications are the same as are at issue in this case—Plaintiffs and the prior applicants all trace title to the United States, have established that the waters are non-navigable, and are thus entitled by the Rule to a Certificate.

While Plaintiffs could amend their Complaint to set out additional detail regarding every similarity between the previously approved applications and Plaintiffs' applications, the

Complaint already contains plausible factual allegations that demonstrate that Plaintiffs are similarly situated as Plaintiffs submitted all information required by the Rule as the prior applicants had to have done in order to obtain certificates.

That Plaintiffs were treated differently is also well-established in the factual allegations of the Complaint. Prior applicants were able to submit applications to Defrendants without being falsely told that Defendatns were not accepting applications. Prior applicants did not have to file suit in order to have their applications merely accepted. Prior applicants were not subject to a secretive process by which applications were rejected but secretly accepted and forwarded to the Commission. Prior applicants were not forced to decide whether to follow the published status of the application process (that Defendants will no longer accept applications) or expend resources applying in hopes that Defendants secretly process their applications. Defendants have treated Plaintiffs differently than other similarly situated applicants. This violates Plaintiffs' right to equal protection of the laws.

In an attempt to shield his unconstitutional behavior, Director Sloane asserts that Plaintiffs are not similarly situated because no other applicants applied for certificates "after the New Mexico Attorney General advised that the Regulation was unconstitutional." Doc. No. 4 at 21. As explained above, this assertion is false. The Grubesic Memorandum, as was explained to Director Sloane by the Deputy Chief Attorney General, was not an Attorney General opinion on which Director Sloane could rely. And, while Director Sloane attempts to hide behind the September 2019 Grubesic Memorandum, he fails to acknowledge that he not only was told not to rely on the Grubesic Memorandum, but that he was in fact instructed to abide by the Rule and to treat Plaintiffs in the same manner as he had treated other applicants. Director Sloane was specifically warned by Deputy Chief Attorney General Tania Maestas that his November 25, 2019 failure to make a

recommendation "which comes after several approvals were issued under the same rule, raises serious due process and equal protection concerns that make that risk untenable." Dec. 16, 2019 Letter at 2 (Ex. A). She went on to warn Director Sloane that "[b]ecause all New Mexicans deserve certainty in the administrative process to ensure fairness and equal application of the law, we reiterate that disparate treatment of applicants under the rule, without a judicial determination or a proper remedial course, exposes the Commission and the State to untenable litigation risk. Accordingly, we respectfully advise you to enforce the rule in a consistent manner or to consider any other steps that would eliminate this risk." *Id.* Director Sloane's refusal to accept applications after receiving this caution renders his actions arbitrary and capricious and give rise to a plausible claim that Plaintiffs' equal protection rights have been violated.  Director Sloane has "direct personal liability" for his decision to refuse to recommend approval, and Plaintiffs' claim against him is appropriate.

## F.  Civil Conspiracy

As Defendants notes in their Motion, Plaintiffs' civil conspiracy claim is not directed at them. Dismissal is thus unnecessary, as the Complaint makes clear that the Department and the Director are not the subject of that claim.

## G.  Qualified immunity

Director Sloane also asserts that he is entitled to qualified immunity. *See* Doc. No. 4 at 7 307083665. While he does not articulate his argument in any detail, it appears that Defendants are contending that the laws Director Sloane violated were not clearly established and that Director Sloane should thus be immune from suit. As explained by the Tenth Circuit Court of Appeals, "[t]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *A.N. by & through Ponder v. Syling*, 928 F.3d 1191, 1196 (10th Cir. 2019) (quotation marks omitted). Dismissal based on qualified immunity is inappropriate if a plaintiff has alleged a plausible claim that "(1) the defendant violated a statutory or constitutional right, and (2) the right was clearly established at the time of the violation." *Id.* This "does not mean that complaints in cases subject to qualified immunity defenses must include all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (quotation marks omitted). Rather, there only need be sufficient factual allegations to give rise to a plausible claim. *Id.*

The Tenth Circuit recently articulated the applicable standards for assessing whether a right was clearly established:

> A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. A Supreme Court or Tenth Circuit decision on point or the weight of authority from other courts can clearly establish a right, but a case directly on point is not required so long as existing precedent has placed the statutory or constitutional question beyond debate. The dispositive question in all cases is whether "the violative nature" of the particular conduct at issue is clearly established.

*Syling*, 928 F.3d at 1198 (citations, alteration marks, and quotation marks omitted). It is not essential that there be a case directly on point, as "clearly established general rules of law can provide notice of the unlawfulness of an official's conduct in appropriate circumstances." *Id.* In the specific context of equal protection claims, "the clearly established rule prohibiting intentional, arbitrary and unequal treatment of similarly situated individuals under the law." *Id.*

While there are obviously no prior cases dealing specifically with whether the failure to uniformly apply the Rule to all applicants is a violation of a plaintiff's right to equal protection, the general rule of law that state actors are prohibited from treating similarly situated persons

differently is well-established. *See Village of Willowbrook*, 528 U.S. 562 (making clear that equal protection is violated when a person "has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment"). And, the fact that Director Sloane's conduct did not comply with the Rule is obvious as the Rule plainly obligates Director Sloane and the Department to accept applications then either recommend approval of an or recommend rejection. By falsely claiming that they are not accepting applications, Defendants intentionally treating similarly situated persons differently without justification. There is one process for those (like Fenn Farm) willing to take the risk of submitting an application despite assertions by Defendants that they will not be accepted and another process for those (like Three Rivers) who take Defendants at their word that they intend to violate the law. And, while Director Sloane accepted and processed prior applicants' applications with no issue, Director Sloane forced Fenn Farm to initiate this litigation to obtain the process provided for by the Rule. He has thus treated Fenn Farm differently than similarly situated applicants. There is no basis in the Rule or any other potentially applicable law for Director Sloane to have acted in the manner at issue here, and Director Sloane's conduct thus violated Plaintiffs' clearly established right to be treated the same as prior applicants.

While Director Sloane asserts that the law at issue was not clearly established because the Grubesic Memorandum—an unofficial document that does not have the force of law—suggested that the Rule might be unconstitutional, Director Sloane's reliance on that document is misplaced. The applicable test is whether the applicable law is clearly established by statutes, the constitution, or the precedent of this and other courts. An opinion of counsel, a stranger's comment that something might or might not be lawful, and other sources of information cannot nullify a clearly established right. Regardless of what Mr. Grubesic said in his memorandum, the law of the United

States is clear—a state actor must treat all persons equally. And, the Rule is clear—the Director was obligated to issue a recommendation of approval or a recommendation of rejection.

And, Director Sloane has failed to explain how his reliance on the Grubesic Memorandum is appropriate given that the Deputy Chief Attorney General expressly told him (1) not to rely on the Grubesic Memorandum as it was not an office Attorney General Opinion and (2) that he was obligated to treat all applicants under the Rule the same. At the time that Defendants stated they were not accepting applications, they already had in hand an unequivocal statement from the Deputy Chief Attorney General making clear that they had to continue to enforce and comply with the Rule. Director Sloane was explicitly told he would be violating the rights of applicants if they were not treated the same as prior applicants, and he cannot now claim he was unaware that he was acting in violation of the Constitution and in violation of the Rule. Qualified immunity thus does not preclude Plaintiffs' equal protection claim and Director Sloane is not immune from this lawsuit.

As to the substantive due process claim, qualified immunity is also inapplicable. First, the state law governing Director Sloane's conduct is clear, unequivocal, and clearly established. While a violation of state law standing alone will not give rise to a §1983 claim, Director Sloane's conduct has a significant impact on Plaintiffs' constitutionally protected property rights. As the United States Supreme Court has articulated, "substantive due process prevents the government from engaging in conduct that shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno,* 481 U.S. 739, 746 (1987) (quotation marks omitted). Substantive due process protects individuals "against arbitrary action of the government." *See County of Sacramento v. Lewis*, 523 U.S. 833, 847. Plaintiffs' right to exclude the public from their property is a constitutionally protected right. *See Kaiser Aetna v. United States*, 444 U.S. 164,

176 (noting that the right to exclude is "one of the most essential sticks in the bundle of rights that are commonly characterized as property"). By refusing to comply with his duties under the Rule, Director Sloane has arbitrarily failed to recognize the private property rights of Plaintiffs and has created a circumstance under which the public may believe that it is in fact permitted to violate Plaintiffs' rights and traipse on and over Plaintiffs' private property. This is a violation of Plaintiffs' constituional right to substantive due process. *See Crown Point Dedvelopment, Inc. V. City of Sun Valley,* 506 F.3d 851, 855 (9th Cir. 2007) (noting that interference with private property rights may give rise to substantive due process rights and that "the Fifth Amendment would preclude a due process challenge only if the alleged conduct is actually covered by the Takings Clause"). By refusing to comply with the Rule, Director Sloane is essentially taking the position that he has no responsibility for enforcing the state's criminal trespass laws, at least insofar as they pertain to private property below public waters. While Director Sloane's actions have not yet risen to the level required to establish a constititional taking of private property, his actions arbitrarily interfere with Plaintiffs' right to exclude the public by preventing Plaintiffs from obtaining the certifications and signage that will put the public on notice that Plaintiffs own the riverbeds on their property. Director Sloane's failure to comply with his clearly established obligations under the Rule are arbitrary, interfere with Plaintiffs' clearly established constitutional rights, and do not allow him to hide behind qualified immunity.

## CONCLUSION

Dismissal of Plaintiffs' claims against Director Sloane and the Department is not appropriate. Plaintiffs have plead plausible claims against Defendants and, if the Court finds any deficiencies in the factual allegations of the Complaint, the appropriate remedy is an order allowing Plaintiffs to amend to comply with the federal pleading standard that now applies to this case.

Respectfully submitted:

MODRALL, SPERLING, ROEHL, HARRIS
   & SISK, P.A.


By:   */s/ Jeremy K. Harrison*
Marco E. Gonzales
Jeremy K. Harrison
Post Office Box 2168


500 Fourth Street NW, Suite 1000
Albuquerque, New Mexico  87103-2168
Telephone: 505.848.1800
meg@modrall.com
jkh@modrall.com
*Attorneys for Plaintiffs*

WE HEREBY CERTIFY that on this 19th day of June, 2020, the foregoing document was filed electronically through the CM/ECF system, which caused all parties of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

MODRALL SPERLING ROEHL
 HARRIS & SISK, P.A.


By  /s/ Jeremy K. Harrison

W3765374.DOCX